UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ANTHONY CLARK,

       Plaintiff,

   v.

STEPHEN J. MURPHY, JULIE A. BECK,
KAREN M. GIBBS, NATE FOUNTAIN,
PATRICK CALDWELL, ROSS ROEL, ROSS
PARKER, REGIONAL DIRECTOR OF DRUG
ENFORCEMENT AGENCY, DETROIT AREA
VIOLENT CRIME TASK FORCE,

       Defendants.

_____/

CASE NO. 2:08-CV-11255
JUDGE AVERN COHN
MAGISTRATE JUDGE PAUL KOMIVES

## REPORT AND RECOMMENDATION

I.    RECOMMENDATION ......................................................... 2
II.   REPORT ................................................................. 2
    A.   *Background* ......................................................... 2
    B.   *Legal Standard* .................................................... 7
    C.   *Analysis* .......................................................... 8
        1.   *Claims Against Murphy, Beck, Gibbs, and Task Force* ........................ 8
        2.   *Official Capacity Claims* ........................................ 8
        3.   *Heck v. Humphrey–Counts I, II, IV, and V* ................................ 9
            a.  Heck Generally ............................................... 9
            b.  Wiretap Claim–Count I ........................................ 11
            c.  Search Claim–Count II ........................................ 12
            d.  Felon in Possession Conviction Claim–Count IV ........................ 14
            e.  Grand Jury Perjury–Count V ................................... 15
            f.  Conclusion Regarding Heck ................................... 16
        4.   *Forfeiture Claim–Count III* ........................................ 16
        5.   *Sufficiency of Plaintiff's Allegations With Respect to Remaining Claims* ........... 19
    D.   *Conclusion* ........................................................ 20
III.  NOTICE TO PARTIES REGARDING OBJECTIONS ........................................ 21

I.    <u>RECOMMENDATION</u>: The Court should treat defendants' motion to dismiss as a motion for summary judgment.  As so construed, the Court should grant in part and deny in part defendants' motion.  Specifically, the Court should deny the motion with respect to the claims asserted in Count I of plaintiff's amended complaint, and with respect to the claim asserted in Count II alleging that defendants destroyed his property in conducting the search of his home.  The Court should grant the motion with respect to the remainder of the claims asserted in Count II, and with respect to Counts III through V.

II.   <u>REPORT</u>:

A.    *Background*

Plaintiff Michael Anthony Clark is a federal prisoner confined at the United States Penitentiary-Big Sandy in Inez, Kentucky.  Plaintiff is incarcerated pursuant a judgment of conviction sentencing him to 50 years' conviction following his 2006conviction in this Court for various drug and firearm offenses.  *See* Def.s' Br., Ex. 14.  On March 24, 2008, plaintiff commenced this *pro se* civil rights action pursuant to *Bivens v. Six Unknown Named Bureau of Narcotics Agents*, 403 U.S. 388 (1971).  Defendants are various Drug Enforcement Administration Agents and Assistant United States Attorneys involved in the investigation and prosecution of plaintiff.  The basic procedural facts are not in dispute.

On February 8, 2005, upon application and affidavit of defendant Caldwell, Judge Robert H. Cleland authorized a wire tap of a telephone number believed to be used by plaintiff.  Over the following months, Judge Cleland granted extensions of the wiretapping order, and allowed the tapping of four additional telephone numbers.  *See* Amended Compl., ¶ 4, 10; Def.s' Br., Ex. 2 (Wiretap Opinion and Order).  On February 12, 2005, a warrant was issued by a state court

2

authorizing a search of plaintiff's residence at 7559 Prairie Street in Detroit. The warrant was issued based on the request of an assistant county prosecutor and based on the affidavit of a local police officer. *See* Amended Compl., ¶ 14; Def.s' Br., Exs. 3-4.[1] The warrant was executed on the same date, resulting in the seizure of various items, including the firearms which ultimately resulted in plaintiff being charged as a felon in possession. *See* Amended Compl., ¶¶ 14, 21-22; Def.s' Br., Exs. 5-6.

On October 6, 2005, plaintiff was charged with fourteen other defendants in a 45-count indictment. *See United States v. Clark*, No. 05-80810 (E.D. Mich.). The indictment charged generally that plaintiff and his codefendants conspired to traffic in illegal drugs, conducted a continuing criminal enterprise, and committed various firearms offenses. Prior to trial, plaintiff filed motions to suppress the wiretap evidence and the firearms seized from his residence. Judge Lawrence P. Zatkoff denied the motions on July 12, 2006. *See* Def.s' Br., Exs. 2 & 6. Plaintiff also filed a motion to dismiss the indictment charging him with being a felon in possession, arguing that his right to possess a firearm under state law had been restored following the completion of his prior state sentence. Judge Zatkoff denied this motion on July 18, 2006. *See id*., Ex. 7.

On November 2, 2006, following a four-week trial, a jury convicted plaintiff of conspiracy to distribute and to possess with intent to distribute marijuana and cocaine, 21 U.S.C. §§ 841(a)(1), 846; participating in a continuing criminal enterprise, 21 U.S.C. § 848; unlawful use of communication facilities to conspire to possess with intent to distribute controlled substances, 21 U.S.C. § 843(b); felon in possession of a firearm, 18 U.S.C. § 922(g)(1); and criminal forfeiture, 21

---

[1]Although the affidavit is sworn by a local law enforcement officer, plaintiff alleges that the application for the search warrant was "prepared as a group by the . . . defendants." Amended Compl., ¶ 18.

U.S.C. § 853(a).  *See* Def.s' Br., Exs. 8 & 14.  The following day, the jury returned a criminal forfeiture verdict finding that various real property and motor vehicles should be forfeited, but that two vehicles (a 2000 Suzuki motorcycle and 2004 Dodge Viper) should not be forfeited.  *See* Def.s' Br., Ex. 9.  On December 21, 2006, Judge Zatkoff entered a preliminary order of forfeiture based on the jury's verdict.  *See id*., Ex. 10.  Judge Zatkoff subsequently entered a final order of forfeiture. *See id*., Exs. 11-13.  Meanwhile on February 27, 2007, Judge Zatkoff sentenced plaintiff to a total of 50 years' imprisonment.  *See id*., Ex. 14.

On April 11, 2006, the Government commenced a civil forfeiture action in this Court seeking forfeiture of thirteen cars and motorcycles seized during the investigation of plaintiff and his codefendants.  *See United States v. One 2002 Chevrolet C-Series Wrecker*, No. 2:06-11748 (E.D. Mich.).  On April 14, 2006, the forfeiture complaint, summons, warrant of arrest and notice *in rem* were served on plaintiff by certified mail addressed to plaintiff's place of incarceration.  Plaintiff received the documents on April 17, 2006.  *See* Def.s' Br., Exs. 15-19.  Notice of the forfeiture action was published in the *Detroit Legal News* on April 14, 21, and 28, 2006.  *See id*., Ex. 20.  On May 11, 2006, plaintiff through counsel filed an answer to the forfeiture complaint.  *See id*., Ex. 21. On December 27, 2007, the Clerk entered a default because no claimant, including plaintiff had filed a verified claim for the assets.  *See id*., Ex. 22.  The Government moved for entry of a default judgment based on the lack of any verified claim, and on February 28, 2008, the Court entered a default judgment forfeiting eleven of the vehicles, but declining to order forfeited the 2000 Suzuki motorcycle and 2004 Dodge Viper which had been found not subject to forfeiture in the criminal action.  *See id*., Exs. 23-24.

Plaintiff commenced this action on March 24, 2008, against defendants Stephen J. Murphy,

4

United States Attorney for the Eastern District of Michigan; Assistant United States Attorneys Julie A. Beck and Karen M. Gibbs; Drug Enforcement Administration (DEA) Special Agents Nate Fountain, Ross Roel, Patrick Caldwell, and Ross Parker, and the DEA Regional Director[2]; and the Detroit Area Violent Crime Task Force.  Plaintiff's complaint consists of five counts.  In Count I, he alleges that defendants violated his Fifth Amendment right to due process of law by filing false applications for wiretaps and committing perjury in connection with the proceedings relating to those wiretaps.  In Count II, he alleges that his Fourth and Fifth Amendment rights were violated by the use of a false affidavit to secure a warrant to search his residence.  In Count III, he alleges that he was denied his Fifth Amendment right to due process of law in connection with the forfeiture of his property.  In Count IV, plaintiff alleges that he was wrongfully convicted of being a felon in possession of a firearm because his right to possess firearms had been restored by state law, and that defendants maliciously prosecuted him for this crime knowing that his right to possess firearms had been restored.  Finally, in Count V plaintiff alleges that defendants presented false evidence to the grand jury regarding his participation in a continuing criminal enterprise, in violation of his Fifth Amendment right to due process of law and his Sixth Amendment right to a grand jury.  Plaintiff seeks $150 million in compensatory damages and $75 million in punitive damages.

On June 30, 2008, defendants filed a motion to dismiss, arguing that plaintiff's claims fail for a number of reasons.  Specifically, defendants contend that: (1) Counts I, II, IV, and V are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) plaintiff lacks standing to challenge the forfeiture which is the subject of Count III; (3) any claims asserted against defendants in their official

---

[2]Defendants assert that Patrick Caldwell died prior to the commencement of this action, and that the DEA has no domestic position known as Regional Director.  Defendants also assert that the DEA has no record of a Special Agent Ross Parker as an employee.  It is likely that plaintiff meant to assert his claims against Assistant United States Attorney Ross Parker.

capacities are barred by sovereign immunity; (4) defendant Detroit Area Violent Crime Task Force is not a suable entity; (5) defendants Murphy, Beck, and Gibbs are entitled to prosecutorial immunity; and (6) plaintiff's allegations are vague and conclusory and fail to allege personal involvement by defendants.  On July 31, 2008, plaintiff filed both a motion for leave to file an amended complaint and a response to defendants' motion to dismiss.  In his amended complaint, plaintiff concedes that his claims against defendants Murphy, Beck, Gibbs, and the Detroit Area Violent Crime Task Force are not proper, and the amended complaint removes these claims from the action.  Plaintiff also attempts to avoid defendant's *Heck* argument by removing from the complaint any reference to his criminal conviction.  In his response to defendants' motion to dismiss, plaintiff argues that the claims asserted in the amended complaint are not barred by *Heck*, that he has sufficiently alleged standing with respect to his forfeiture claim, and that his allegations are sufficiently detailed to state a claim upon which relief may be granted.  Defendants' filed a reply to plaintiff's response to their motion, combined with a response to plaintiff's motion to amend.  Defendants argue that plaintiff's amended complaint suffers from the same flaws as his original complaint.

On today's date, the undersigned entered an Order granting plaintiff's motion to amend, concluding that this was appropriate as a procedural matter given both that the sufficiency of the amended complaint is intertwined with the sufficiency of the original complaint, and that the parties have fully briefed the merits of plaintiff's amended claims.  Because the parties have fully briefed the issue, it is appropriate to consider defendants' entitlement to dismissal of the claims asserted in the amended complaint.

B.      *Legal Standard*

6

Although the defendants' motion is styled as one to dismiss brought under FED. R. CIV. P. 12(b)(6), it is appropriate to treat the motion as one for summary judgment under FED. R. CIV. P. 56, because both parties have presented matters outside the pleadings. *See Burke v. Johnson*, 167 F.3d 276, 280 (6th Cir. 1999); *Performance Contracting, Inc. v. Seaboard Surety Co.*, 163 F.3d 366, 369 n.2 (6th Cir. 1998); FED. R. CIV. P. 12(b)

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*

7

*Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell*

*Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than

present some evidence on a disputed issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the
> nonmoving party for a jury to return a verdict for that party.  If the [non-movant's]
> evidence is merely colorable, or is not significantly probative, summary judgment
> may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he

existence of a mere scintilla of evidence in support of the non-moving party's position will not be

sufficient; there must be evidence on which the jury could reasonably find for the non-moving

party."  *Sutherland*, 344 F.3d at 613.

C.      *Analysis*

1.      *Claims Against Murphy, Beck, Gibbs, and Task Force*

In their motion, defendants contend that plaintiffs claims against defendants Murphy, Beck,

and Gibbs are barred by their absolute prosecutorial immunity, and that plaintiff's claims against

the Detroit Area Violent Crime Task Force are improper because the Task Force is not a suable

entity.  In his amended complaint, plaintiff has removed his claims against these defendants.  Thus,

the Court need not consider these claims further.

2.      *Official Capacity Claims*

To the extent that plaintiff is suing defendants in their official, as opposed to individual,

capacities, plaintiff's claims are barred by defendants' sovereign immunity. As the Sixth Circuit has explained: "The United States as a sovereign is immune from suit for money damages unless it unequivocally has waived such immunity. The doctrine of sovereign immunity not only bars suits against the United States when the plaintiff seeks monetary damages but also extends to suits for money damages against officers and agents of the United States in their official capacities." *Blakely v. United States*, 276 F.3d 853, 870 (6th Cir. 2002). Thus, to the extent that plaintiff is seeking money damages from defendants in their official capacities, defendants are entitled to summary judgment.

      3.   <u>*Heck v. Humphrey*</u>–*Counts I, II, IV, and V*

The bulk of defendants' motion is addressed to the *Heck* issue. Defendants argue that plaintiff's claims (except for the forfeiture claim) are barred by *Heck* because plaintiff's success on those claims would necessarily imply that his conviction is invalid. Plaintiff counters that *Heck* is inapplicable because he is not attacking his conviction or sentence, and because his amended complaint does not mention his conviction at all.

         *a. Heck Generally*

Where a state prisoner challenges the validity of his or her conviction, a federal court must be on guard against upsetting the delicate balance between state and federal judicial power by usurping the role of the state appellate courts. *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971); *Foster v. Kassulke*, 898 F.2d 1144, 1146-47 (6th Cir. 1990). The Court should also be wary of § 1983 being "used to make an end run around habeas corpus procedures." *Foster*, 898 F.2d at 1148. With these concerns in mind, the Supreme Court held in *Heck*:

> [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, of for other harm caused by actions whose unlawfulness would

>render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
>conviction or sentence has been reversed on direct appeal, expunged by executive
>order, declared invalid by a state tribunal authorized to make such determination,
>or called into question by a federal court's issuance of a writ of habeas corpus, 28
>U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or
>sentence that has *not* been so invalidated *is not cognizable under § 1983*.

*Heck*, 512 U.S. at 486-87 (footnote omitted) (second emphasis added).  This rule limits the

intrusion of § 1983 actions into areas properly reserved for habeas review "in a manner consistent

both with the federalism concerns undergirding the explicit exhaustion requirement of the habeas

statute, and with the state of the common law at the time § 1983 was enacted."  *Id.* at 491

(Thomas, J., concurring) (citations omitted).  Thus, in analyzing whether a claim is barred by the

*Heck* rule, a court "must consider whether a judgment in favor of the plaintiff would *necessarily*

imply the invalidity of his conviction or sentence."  *Id.* at 487 (emphasis added).  The Supreme

Court has subsequently stressed that the possibility of an effect on the conviction or sentence is

not sufficient; the civil rights claim must necessarily, if successful, imply that the underlying

conviction is unlawful.  *See Nelson v. Campbell*, 541 U.S. 637, 647 (2004).

Thus, the Court must look to each of plaintiff's claims individually to determine if success

on the claim would necessarily imply that plaintiff's underlying conviction is invalid.  Before

conducting this inquiry, however, I note that plaintiff's argument that *Heck* is not implicated here

because his amended complaint does not directly challenge his conviction or mention the

conviction is without merit.  The *Heck* rule is not dependent upon plaintiff's characterization of

his claim, nor is the applicability of the rule limited to situations in which a plaintiff purports to

directly challenge his conviction.  Rather, the *Heck* rule is applicable whenever success on a

claim–no matter how characterized by the plaintiff–would necessarily imply that his conviction

is invalid.  As the Court explained in *Heck*, the rule set down in that case applies where

"establishing the basis for the damages claims necessarily demonstrates the invalidity of the conviction," *Heck*, 512 U.S. at 481-82, and extends to claims seeking damages not only for wrongful conviction but also "for other harms caused by actions whose unlawfulness would render a conviction or sentence invalid." *Id.* at 486. Thus, if plaintiff's claims would necessarily imply that his conviction is invalid, his claims are barred by *Heck* notwithstanding the fact that petitioner did not mention the conviction in his amended complaint and does not directly challenge that conviction.

### b. Wiretap Claim–Count I

In his first count, plaintiff alleges that defendants Fountain, Caldwell, Roel, and Parker "made application to this court for an order authorizing the interception of wire communications," and in doing so "falsely swore . . . that there was probable cause to believe that the plaintiff and others were committing, or would commit," the offenses listed in the warrant application. Amended Compl., ¶¶ 4-5. Plaintiff further alleges that "[t]he defendants knew, without doubt, that the plaintiff was not engaged in any such illegal activities," *id.*, ¶ 5, and that defendants knew that the four confidential informants upon which relying were not telling the truth, *see id.*, ¶ 65.

It is true that a wiretap obtained through the use of material misstatements of fact in the application violates the wiretap statute, *see Apampa v. Layng*, 157 F.3d 1103, 1105 (7th Cir. 1998); *United States v. Bianco*, 998 F.2d 1112, 1126 (2d Cir. 1993), and that the remedy for violation of the wiretap statute is suppression of the evidence in the criminal case. *See* 18 U.S.C. §§ 2515, 2518(10)(a). Thus, success on a damages claim based on a violation of the wiretap statute could imply the invalidity of a plaintiff's underlying conviction. *See Bansal v. Russ*, 513 F. Supp. 2d 264, 278 (E.D. Pa. 2007). However, success on such a claim would not *necessarily* imply the invalidity

of a conviction, because the admission of the illegally obtained evidence may have been harmless in light of the totality of the evidence presented at trial. *See Apampa*, 157 F.3d at 1105; *Bansal*, 513 F. Supp. 2d at 278. On the record currently before the Court, it is impossible to tell to what extent the allegedly illegally obtained wiretap evidence contributed to plaintiff's conviction. Thus, it cannot be said as a matter of law that success on plaintiff's wiretap claim would necessarily imply the invalidity of his conviction, *see Bansal*, 513 F. Supp. 2d at 278, and the Court should conclude that defendants are not entitled to summary judgment based on *Heck* with respect to Count I of the complaint.

### c. Search Claim–Count II

However, the Court should conclude that defendants are entitled to summary judgment based on *Heck* with respect to Count II of plaintiff's amended complaint. In Count II, plaintiff alleges that the defendants falsely alleged facts supporting probable cause in the application and affidavit in support of the warrant application. *See* Amended Compl., ¶¶ 16-19. Plaintiff also alleges that the scope of the search was unreasonable because defendants "destroyed the plaintiff's home during execution of the search warrant" by removing and tearing apart the floors and destroying his furniture. *Id.*, at ¶ 24.

In *Heck*, the Court explicitly recognized a Fourth Amendment illegal search claim as the type of claim which, although related to a criminal conviction, would not necessarily imply the invalidity of a conviction if successful. The Court explained:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.

12

2:08-cv-11255-AC-PJK   Doc # 18   Filed 02/10/09   Pg 13 of 21   Pg ID 447

*Heck*, 512 U.S. at 487 n.7 (citations omitted).  Although this language suggests that Fourth

Amendment illegal search claims are always permissible, in *Wallace v. Kato*, 549 U.S. 384 (2007),

the Court noted that some Fourth Amendment illegal search claims may, indeed, imply the invalidity

of an underlying conviction.  *See id.* at 395 n.5.  Synthesizing these cases, the Sixth Circuit has

recently explained the approach a court should take in assessing whether an illegal search claim

would necessarily imply the invalidity of a conviction:

> By way of a now well-known footnote, the *Heck* Court observed that even
> if successful, some Fourth Amendment claims brought under § 1983 "would not
> necessarily imply that the plaintiff's conviction was unlawful" due to doctrines like
> independent source, inevitable discovery, and harmless error. *Id.* at 487 n. 7. Some
> courts read *Heck* to suggest that as a rule, Fourth Amendment claims may proceed
> because they cannot impugn the validity of a conviction. *See, e.g., Wallace v. City
> of Chicago*, 440 F.3d 421, 428 (7th Cir.2006) (concluding that "the Fourth
> Amendment violation affects only the evidence that might or might not be presented
> to the trier of fact" and not the outstanding conviction); *Hughes v. Lott*, 350 F.3d
> 1157, 1160 (11th Cir.2003) (same).
>
> For now, however, the Supreme Court suggests that Heck will bar at least
> some Fourth Amendment claims. In *Wallace v. Kato*, 549 U.S. 384 (2007), Justice
> Scalia voiced the majority's conclusion that "a Fourth Amendment claim can
> necessarily imply the invalidity of a conviction, and ... if it does it must, under *Heck*,
> be dismissed." *Id.* at [395] n. 5. Sixth Circuit precedent comports with that position,
> placing the onus on the district court to assess on a case-by-case basis whether a
> favorable Fourth Amendment judgment would impugn the validity of an outstanding
> conviction. *E.g., Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir.1995); *Jackim v.
> City of Brooklyn*, No. 1:05 cv 1678, 2007 WL 893868, at *7 n. 11 (N.D.Ohio Mar.22,
> 2007) (unpublished).

*Harper v. Jackson*, 293 Fed. Appx. 389, 391-92 (6th Cir. 2008) (footnote and parallel citations

omitted).  In particular, an illegal search claim will necessarily imply the invalidity of a conviction

"where the contested search produced the *only* evidence supporting the conviction and no legal

doctrine could save the evidence from exclusion."  *Id.* at 392 (citing *Ballenger v. Owens*, 352 F.3d

842, 847 (4th Cir.2003); *Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir.1999)).

Here, it cannot be disputed that the illegal search produced the only evidence supporting

13

plaintiff's felon in possession conviction.  That conviction was based solely on the guns uncovered in the search of plaintiff's home.  Nor is there any legal doctrine which could have saved the evidence from exclusion if plaintiff's allegations are true.  The evidence was such that it could not have been obtained other than by a search of plaintiff's home, and under plaintiff's allegations no independent source could have lead to the inevitable discovery of the firearms.  Nor could the good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984), save the evidence from exclusion.  That exception to the exclusionary rule applies when the officers executing the search act in good faith reliance on a facially valid warrant issued by a neutral magistrate; it is inapplicable, however, when the executing officers submitted a materially false affidavit to secure the warrant. *See Leon*, 468 U.S. at 923.  Thus, success on plaintiff's illegal search claim would necessarily imply the invalidity of his underlying conviction, and the Court should conclude that defendants are entitled to summary judgment on the basis of *Heck* with respect to most of Count II.

This analysis does not apply, however, to plaintiff's claim in Count II that the search was unreasonable because the officers destroyed his home.  Success on this claim would not suggest that any evidence should have been suppressed, and therefore would not imply the invalidity of plaintiff's felon in possession conviction.  This aspect of plaintiff's illegal search claim therefore is not barred by *Heck*.

### d.  Felon in Possession Conviction Claim–Count IV

In Count IV of his amended complaint, plaintiff alleges that defendants violated his Second and Fifth Amendment rights when they prosecuted him for being a felon in possession of a firearm knowing that his civil right to possess a firearm had been restored by state law, and prosecuted him for using or carrying a firearm in the furtherance of drug trafficking crime knowing he had not done

14

so.  If, indeed, plaintiff's right to possess a firearm had been restored, then he was not properly convicted of being a felon in possession of a firearm.  *See* 18 U.S.C. §§ 922(g) (providing that it is unlawful for a person previously convicted of a crime punishable by more than one year imprisonment to possess a firearm), 921(20) (providing that a crime for which a person's civil rights have been restored is not considered a conviction).  Thus, success on this claim would necessarily imply the invalidity of plaintiff's felon in possession conviction.  Likewise, success on plaintiff's claim would necessarily imply the invalidity of his conviction for using or carrying a firearm in relation to a drug trafficking offense.  Indeed, the claim asserted in Count IV is in the nature of a malicious prosecution claim, which is the precise type of claim which the Court considered in *Heck* to necessarily imply the invalidity of an underlying conviction.  *See Heck*, 512 U.S. at 486-87. Accordingly, the Court should conclude that defendants are entitled to summary judgment with respect to Count IV of plaintiff's amended complaint.

### e.  Grand Jury Perjury–Count V

Finally, in Count V plaintiff alleges that defendant testified falsely before the grand jury with respect to the facts which resulted in him being indicted for conducting a continuing criminal enterprise.  This claim is also in the nature of a malicious prosecution claim, and success on the claim would necessarily imply the invalidity of plaintiff's underlying conviction.  *See Krug v. County of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008); *Akhenaten v. New Jersey Transit Rail Operations & Mercer County*, No. 07-3641, 2008 WL 577227, at *4 (D.N.J. Feb. 29, 2008); *Combs v. City of Dallas*, No. 3-06-CV-74, 2006 WL 3635357, at *7 (N.D. Tex. Sept. 22, 2006). Accordingly, the Court should conclude that defendants are entitled to summary judgment with respect to Count V.

15

*f. Conclusion Regarding Heck*

In view of the foregoing, the Court should conclude that, based on the current record, it cannot be said as a matter of law that plaintiff's claims in Count I and for damages resulting from the manner of the search in Count II would necessarily imply the invalidity of his conviction, and that defendants are therefore not entitled to summary judgment on the basis of *Heck* with respect to these claims. The Court should also conclude that the claims set forth in the remainder of Count II, and the claims asserted in Counts IV and V, if successful, would necessarily imply the invalidity of his conviction. Because plaintiff's conviction has not been overturned or set aside, the Court should conclude that defendants are entitled to summary judgment with respect to these claims.

4.      *Forfeiture Claim–Count III*

In Count III, plaintiff alleges that the defendants improperly effectuated the forfeiture of his property because the property was not subject to forfeiture. *See* Amended Compl., ¶¶ 33-34. Plaintiff also alleges that the notice of forfeiture served in connection with the civil forfeiture case in this Court was served on him despite the pendency of a civil claim in the Office of the United States Attorney. Plaintiff alleges that defendants led him to believe that his legal interest in the property was preserved, and that he thought that the complaint in the civil case was part of the civil claim he had already filed. Defendants argue that plaintiff lacks standing to challenge the forfeiture because he did not file a verified claim asserting an interest in the property in the civil forfeiture action.

"In order to contest a governmental forfeiture action, claimants must have statutory standing through compliance with Supp. Admiralty and Maritime Claims R. C(6), as well as the Article III standing required for any action brought in federal court." *United States v. $515,060.42 in U.S.*

16

*Currency*, 152 F.3d 481, 497 (6th Cir. 1998).  Rule C(6), as it existed at the time of the civil

forfeiture action,[3] provided in relevant part:

> In an in rem forfeiture action for violation of a federal statute:
> (I) a person who asserts an interest in or right against the property that is the subject of the action must file a verified statement identifying the interest or right:
> (A) within 30 days after the earlier of (1) the date of service of the Government's complaint or (2) completed publication of notice under Rule C(4), or
> (B) within the time that the court allows;
> (ii) an agent, bailee, or attorney must state the authority to file a statement of interest in or right against the property on behalf of another; and
> (iii) a person who files a statement of interest in or right against the property must serve and file an answer within 20 days after filing the statement.

RULE C(6)(a), SUPP. RULES FOR CERTAIN ADMIRALTY & MARITIME CLAIMS (2002); *see also*, 18

U.S.C. § 983(a)(4).  Strict compliance with the procedures set forth in Rule C(6) is required.  *See*

*United States v. $487,825.00 in U.S. Currency*, 484 F.3d 662, 665 (3d Cir. 2007); *United States v.*

*Thirty-Five Firearms*, 123 Fed. Appx. 204, 206 (6th Cir. 2005); *United States v. Three (3) Parcels*

*Real Property Located in Jefferson Davis County, Miss.*, 814 F. Supp. 527, 530 (S.D. Miss. 1993).

Thus, regardless of whether a claimant can satisfy the requirements of standing under Article III of

the Constitution, "a claimant's failure to strictly adhere to Supplemental Rule C(6) precludes the

requisite statutory standing to contest a government forfeiture claim."  *United States v. Currency*

*$267,961.07*, 916 F.2d 1104, 1108 (6th Cir. 1990).

    Here, it is undisputed that plaintiff received service of the forfeiture complaint and summons

on April 17, 2006, *see* Def.s' Br., Exs. 15-19; Pl.'s Opp'n to Def.s' Mot. to Dismiss, at 8, and that

notice via publication was accomplished in the *Detroit Legal News* on April 14, 21, and 28, 2006,

*see* Def.s' Br., Ex. 20.  It is also undisputed that the summons clearly informed plaintiff of the

---

[3]Effective December 1, 2007, the provisions of the admiralty rules governing civil forfeiture claims were moved from Rule C to a new Rule G, and substantially altered.  The rule in effect at the time of the civil forfeiture proceeding governs here.

procedures for contesting the forfeiture under Rule C(6) and 18 U.S.C. § 983(a)(4)(A). *See* Def.s'
Br., Ex. 16. Plaintiff does not contend that he did not receive the forfeiture complaint and summons
or that the Government's complaint and summons failed to satisfy Rule C(6). Plaintiff argues only
that he has standing because the Government knew of his interest in the property by virtue of his
administrative claim, and because he was *pro se* and did not understand that the civil complaint was
a separate proceeding from the administrative claim. These arguments are without merit.

As explained above, strict compliance with Rule C(6) is required. Because an administrative
claim is a distinct claim with separate procedural requirements, such an administrative claim does
not suffice to establish compliance with Rule C(6). *See Thirty-Five Firearms*, 123 Fed. Appx. at
206-07; *United States v. $5,730.00 in U.S. Currency*, 109 Fed. Appx. 712, 714 (6th Cir. 2004);
*United States v. One 1990 Mercedes Benz 300CE VIN WDBA51E8LB183486*, 926 F. Supp. 1, 4
(D.D.C. 1996). Nor does the fact that plaintiff was without counsel excuse him from strict
compliance with Rule C(6). First, counsel did file an appearance in the civil action. Even if his
appearance came too late to file a timely verified claim, counsel could have moved for an extension
of time or, after judgment was entered to set aside the judgment under 18 U.S.C. § 983(e). In any
event, strict compliance with the verified claim requirement of Rule 6(C) is "not excused because
the [plaintiff] initially proceeded pro se, nor because [his attorney] may have misadvised [him]."
*United States v. One Parcel of Real Property Located at Tracks 10 & 11 of Lakeview Heights,
Canyon Lake, Comal County, Tex.*, 51 F.3d 117, 120 (8th Cir. 1995); *see also*, *United States v. 328
Pounds, More or Less, of Wild American Ginseng*, 347 F. Supp. 2d 241, 248 (W.D.N.C. 2004).[4]

_____

[4]This is so because, unlike other procedural rules for which a *pro se* litigant may be given leeway,
"[t]he filing of a verified statement, as required by Rule C(6), is no mere procedural technicality. It
forces claimants to assert their legal ownership under oath, creating a deterrent against filing false
claims." *United States v. $23,000 in United States Currency*, 356 F.3d 157, 163 (1st Cir. 2004); *see also*,

In short, it is undisputed that plaintiff received proper notice yet failed to file a verified claim in the civil forfeiture action as required by Rule C(6).  As a matter of law, this failure deprived him of standing to challenge the forfeiture in the civil forfeiture action, and it likewise deprives him of standing to challenge the forfeiture in this civil damages action.  *See Sanchez v. United States*, 781 F. Supp. 835, 837-38 (D.P.R. 1991), *aff'd*, 976 F.2d 724 (1st Cir. 1992).  Accordingly, the Court should conclude that defendants are entitled to summary judgment with respect to Count III of plaintiff's amended complaint.

     5.     *Sufficiency of Plaintiff's Allegations With Respect to Remaining Claims*

As explained above, the claims alleged by plaintiff in Count I, and the destruction of property claim alleged in Count II, survive defendants' motion to dismiss on the basis of *Heck*.  Defendants also contend that plaintiff's claims are vague and fail to state a claim because they fail to allege with sufficient specificity the personal involvement of each defendant.  The Court should disagree.

In Count I, plaintiff alleges that defendants Fountain, Caldwell, Roel, and Parker "made application to this Court for an order authorizing the interception of wire communication" and in doing so "falsely swore" various things "as part of the aforesaid application."  Amended Compl., ¶¶ 4-10.  The allegations set forth the particular portions of the application which were false.  *See id*.  The amended complaint therefore gives notice of the basis of his claim against the defendants named in Count I and the grounds upon which his claim rests.  *See Erickson v. Pardus*, 551 U.S. 89, ___, 127 S. Ct. 2197, 2200 (2007) (per curiam) (internal quotation omitted) (to satisfy Rule 8, pleading of "[s]pecific facts [is] not required; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.").  This is sufficient to constitute a "short

---

*$487,825.00 in U.S. Currency*, 484 F.3d at 664-65.

and plain statement of the claim" as required by FED. R. CIV. P. 8, *see Rochon v. Dillon*, 713 F. Supp. 1167, 1177 (N.D. Ill. 1989) (complaint not defective under Rule 8 for failing to allege each specific act taken by each defendant), particularly given that plaintiff is proceeding *pro se*.  *See Erickson*, 127 S. Ct. at 2200.  Likewise, Count II names the defendants involved with that count and alleges that they "destroyed the plaintiff's home during the execution of the search warrant." Amended Compl., ¶ 24.  This allegation is sufficient to meet the liberal pleading requirements of Rule 8.

To be sure, it may be the case that some or all of the defendants were not, in fact, personally involved in either the securing of the wiretap warrant or the execution of the search warrant.  If not, defendants may file a properly supported motion for summary judgment making this argument.  The materials submitted by defendants do not, however, address their personal involvement or lack thereof, and thus the Court must accept plaintiff's allegations on their face.  Accordingly, the Court should deny defendants' motion for summary judgment on this basis.

D.    *Conclusion*

In view of the foregoing, the Court should conclude that the claims asserted in Count I of plaintiff's amended complaint, as well as the property destruction claim asserted in Count II, are not barred by *Heck* and are sufficiently pleaded under Rule 8.  Accordingly, the Court should deny respondent's motion to dismiss with respect to this claims.  The Court should also conclude, however, that plaintiff lacks statutory standing to bring the forfeiture related claims asserted in Count III, and that plaintiff's remaining claims are barred by *Heck* because success on those claims would necessarily imply that plaintiff's convictions are invalid.  Accordingly, the Court should grant summary judgment to defendants with respect to these claims.

20

III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES

     UNITED STATES MAGISTRATE
JUDGE
Dated: 2/10/09

| The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on February 10, 2009. |
| --- |
| s/Eddrey Butts |
| Case Manager |

21